United States District Court
Southern District of Texas
**ENTERED**
March 25, 2021
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| Angelique Howen, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action H-19-4358 |
| | § | |
| Andrew M. Saul, | § | |
| Commissioner of the Social | § | |
| Security Administration, | § | |
| *Defendant*. | § | |

## MEMORANDUM AND ORDER

Angelique Howen appeals the Social Security Administration (SSA) Commissioner's final decision denying her application for social security benefits. (D.E. 1.) Pending before the court is Plaintiff's Motion for Summary Judgment (D.E. 15) and Defendant's Motion for Summary Judgment (D.E. 17). The parties consented to the jurisdiction of the magistrate judge and the district judge transferred the case to the undersigned for all further proceedings, including entry of final judgment. (D.E. 14). Having considered the motions, filings, and applicable law, the court remands the final decision of the Commissioner for further proceedings consistent with this Order.

### 1. Procedural Posture

Howen applied for disability insurance benefits on January 18, 2018, with a filing date of December 15, 2017. (Tr. 74, 91, 184–86.) Howen claimed that she

became disabled on November 27, 2017, due to severe, persistent asthma; chronic obstructive pulmonary disease (COPD) exacerbation; cirrhosis of the liver; chronic hepatitis C; depression; anxiety; and panic attacks. (Tr. 59–60, 74–76, 91, 185.) Howen was born on January 17, 1971, and was forty-six years old on the filing date. (Tr. 74, 91, 185.) Howen last worked in November 2017 as a dog groomer. (Tr. 39, 260.) Prior to holding that job, she worked as a cashier, a dispute resolution analyst, a data entry clerk, and a tax preparer. (Tr. 40–43, 260.)

Based on Howen's earnings record, the SSA determined that she was insured under the Social Security Act through December 31, 2018. (Tr. 18, 74, 91, 274, 300.) To be entitled to disability insurance benefits, an applicant must be insured on the date when disability is established. *See* 20 C.F.R. § 404.131(b)(1) (2017) ("To become entitled to disability insurance benefits, [a claimant] must have disability insured status in the first full month that [she is] disabled."). As applied to Howen, she must establish that she became disabled prior to the termination of her insured status on December 31, 2018. Thus, the relevant period under consideration is December 15, 2017, Howen's filing date, through December 31, 2018, the date she was last insured.

The SSA denied Howen's application on May 16, 2018. (Tr. 59–74.) Howen sought reconsideration on May 29, 2018. (Tr. 96–97.) The application was again

denied on August 22, 2018. (Tr. 75–91.) On September 6, 2018, Howen requested a hearing. (Tr. 107–09.)

Administrative Law Judge (ALJ) Thomas J. Helget held a hearing on January 17, 2019, in Houston, Texas. (Tr. 35–58.) The ALJ issued a decision on March 4, 2019, finding that Howen was not disabled. (Tr. 18–29.) The Appeals Council denied Howen's request for review on September 3, 2019. (Tr. 2–6.)

Howen, proceeding pro se, timely filed a complaint in federal court to appeal the Commissioner's final decision when she filed an application to proceed in forma pauperis on October 31, 2019. *See* Misc. Action No. H-19-03245. Defendant filed an answer, admitting the allegations in paragraphs I and II of Howen's complaint. (D.E. 6 at 1.) In her motion and reply brief, Howen expressed confusion as to what Defendant was admitting. (D.E. 15 at 1, D.E. 18 at 1.) The paragraphs labeled I and II in Howen's complaint identify the parties to the lawsuit and the basis for jurisdiction. (D.E. 1 at 2.) Thus, Defendant admitted that the parties named by Howen are the plaintiff and defendant in this action and that the court has jurisdiction to hear the case.

Attached to Howen's motion for summary judgment are letters by two of her treating physicians signed in October 2019 and her own undated statement. (D.E. 15-1, D.E. 15-2, D.E. 15-3.) Federal courts do not review new evidence on appeal from the SSA. *See Schuler v. Saul*, 805 F. App'x 304, 305 (5th Cir. 2020). The court,

3

however, may remand the case for consideration of new and material evidence if "there is good cause for the failure to incorporate such evidence into the record in a prior SSA proceeding" and the court finds "a reasonable possibility that it would have changed the outcome of the Commissioner's determination." *Id.* at 305–06 (quoting 42 U.S.C. § 405(g); *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994)). In the prior SSA proceeding, Howen's attorney affirmed that the record was complete. (Tr. 57.)

Howen's evidence does not warrant remand because, among other reasons, none of the documents submitted would have changed the ALJ's finding of "not disabled." This is because the proffered medical opinions of Ali Al-Himyary, M.D., are not consistent with his treatment notes, the letter by Sheela Chandra, M.D., merely states Howen's medical diagnoses without providing any information about her functional limitations, and Howen's statement contains information that is either cumulative of that considered by the ALJ or is not supported by the objective medical evidence in the administrative record. The court has not considered any of this evidence in its review of the Commissioner's final decision.

## 2. Hearing

At the hearing on January 17, 2019, the ALJ heard testimony from Howen and a vocational expert (VE). (Tr. 36, 38–57.) Howen was represented by an attorney. (Tr. 35.)

Howen testified about her symptoms from COPD, asthma, cirrhosis of the liver, depression, and anxiety; the resulting limitations; and her medical treatment. (Tr. 44–53.) Howen testified that she stopped working as a dog groomer when, in November 2017, she contracted an illness that caused difficulty breathing. (Tr. 44, 46.) She said that she unsuccessfully attempted to return to work in January 2018. (Tr. 46.)

Howen testified that her medications made her jittery and forgetful. (Tr. 45, 49.) She testified that the side effects interfered with her ability to concentrate, to sit still, and to remember that she had placed food in the oven, where she placed other items, or when to take her medications. (Tr. 45, 50.) Her attorney asked whether those symptoms were attributable to her medications or her mental condition. (Tr. 49.) She responded, "I think it's both." *Id.* Howen testified that she reported the symptoms to medical providers who agreed that the symptoms were caused by medications. (Tr. 50.) Howen testified that her primary care doctor prescribed medications to treat depression and anxiety. (Tr. 52–53.) She said that they helped her relax so that she can sleep at night. (Tr. 53.)

The ALJ asked the VE what work a hypothetical individual with Howen's education, training, and work experience could do if limited to light exertion and the following:

> Let's avoid frequent exposure to fumes, odors, dusts, gases, environments with poor ventilation. The individual would be able to understand, remember and carry out detailed, but not complex instructions, make basic decisions, concentrate for extended periods, accept instructions and respond appropriately to changes in the routine work setting. The individual would only be allowed to have occasional interaction with the general public.

(Tr. 53–54.) The VE testified that such an individual would not be able to perform Howen's past relevant work but would be able to perform the jobs of general office clerk, a light exertion, semi-skilled position, and the light exertion, unskilled jobs of mail clerk, small products assembler, and price marker. (Tr. 54–55.) At the ALJ's request, the VE also provided three jobs at the sedentary, unskilled level: document preparer, eyeglass polisher, and final assembler. (Tr. 56–57.) The ALJ asked if there were any jobs for someone who was off task more than twenty percent of the workday, missed more than two workdays per month, or required more than two fifteen-minute breaks. (Tr. 57.) The VE said that there would be no jobs available. *Id.* Howen's attorney was given the opportunity but declined to ask the VE any follow-up questions. *Id.*

The ALJ issued a decision on March 4, 2019, finding that Howen was not disabled. (Tr. 18–29.)

### 3. Legal Standards

The Social Security Act provides disability insurance benefits to individuals with physical and mental disabilities who have contributed to the program. *See*

42 U.S.C. § 423. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner uses a sequential, five-step approach to determine whether the claimant is disabled. *See Schofield v. Saul*, 950 F.3d 315, 317 (5th Cir. 2020). The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step. *See Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021). A finding that the claimant is disabled or not disabled at any point in the five-step review terminates the analysis. 20 C.F.R. § 404.1520(a)(4) (2017).

The court's review of the ALJ's decision is limited to determining whether the decision is supported by substantial evidence and whether the evaluation of evidence was based on proper legal standards. *Keel*, 986 F.3d at 555 (quoting *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016)). "'Substantial evidence' means enough evidence 'that a reasonable mind might accept it as adequate to support a conclusion.'" *Murray v. Astrue*, 419 F. App'x 539, 541 (5th Cir. 2011) (quoting *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992)). The court may not reweigh the evidence, substitute its judgment, or decide the issues *de novo*. *Johnson v. Colvin*, 595 F. App'x 443, 444 (5th Cir. 2015) (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)). "Even though [the court's] review is limited, 'it is

imperative that [the court] scrutinize the record in its entirety to determine the reasonableness of the decision reached by the [Commissioner] and whether substantial evidence exists to support it.'" *Murray*, 419 F. App'x at 541 (quoting *Randall*, 956 F.2d at 109).

### 4. The ALJ's Decision

#### A. Step One

At step one, the ALJ must determine whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i) (2017). A person engaged in substantial gainful activity is not disabled, regardless of her medical condition, age, education, or work experience. 20 C.F.R. § 404.1520(b) (2017).

The ALJ correctly found that Howen had not engaged in substantial gainful activity since the alleged disability onset date of November 27, 2017. (Tr. 20, 271.)

#### B. Step Two

At step two, the ALJ determines whether any of the claimant's impairments are severe. 20 C.F.R. § 404.1520(a)(4)(ii) (2017). An impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (emphasis omitted) (quoting *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000)).

A person who does not have a severe impairment is not disabled. *Schofield*, 950 F.3d at 318 (citing 20 C.F.R. § 404.1520(c)).

The ALJ found that Howen had the following severe impairments: "obesity, [COPD], asthma, cirrhosis of the liver, hepatitis C, major depressive disorder, mood disorder, panic disorder, anxiety disorder, coronary artery disease, peripheral artery disease, hyperlipidemia, and hypertension." (Tr. 20.) The ALJ stated that these impairments "significantly limit[ed] the ability to perform basic work activities[.]" *Id.* The ALJ found that "irritable bowel syndrome, diverticulitis, pancreatitis, splenomegaly, cellulitis, and gastroesophageal reflux disease[]" were not severe impairments. (Tr. 21.)

The court's review of the record confirms that the ALJ's step-two findings are supported by substantial evidence. Howen does not dispute these findings.

### C. Step Three

At step three, the ALJ determines if any of the claimant's severe impairments meets or equals a listed impairment in appendix 1 (Listing). 20 C.F.R. § 404.1520(a)(4)(iii) (2017); *see also* 20 C.F.R. Part 404, Subpt. P, App'x 1 (2017). If all the criteria of a Listing are met or equaled, the claimant is considered disabled. 20 C.F.R. § 404.1520(d) (2017).

The ALJ found that Howen's impairments or combination of impairments did not meet or medically equal the severity of an impairment defined in the Listing.

(Tr. 21.) The ALJ appropriately considered Listing sections 3.02 (chronic respiratory disorders), 3.03 (asthma), 12.04 (depression), and 12.06 (anxiety). (Tr. 21–23.)

The court's review of the record shows that substantial evidence supports the ALJ's step-three findings. Howen does not dispute these findings.

### D. Residual Functional Capacity

Before reaching the final two steps, the ALJ must assess the claimant's residual functional capacity (RFC) "based on all the relevant medical and other evidence in [the] case record." 20 C.F.R. § 404.1520(e) (2017); *see also Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005) (citing 20 C.F.R. § 404.1545(a)(1)); SSR 96-8p, 1996 WL 374184, at *2, 3, 5 (July 2, 1996). An RFC assessment is a determination of the most a claimant can still do despite all physical and mental limitations. *Perez*, 415 F.3d at 461–62 (citing 20 C.F.R. § 404.1545(a)(1)); SSR 96-8p, 1996 WL 374184, at *2, 4 (July 2, 1996). "The RFC must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). Where the RFC assessment conflicts with a medical opinion, "the adjudicator must explain why the opinion was not adopted." *Id.*

The ALJ determined that Howen had the RFC:

> to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except the claimant must avoid frequent exposure to fumes, odors, dusts, gases and environments with poor ventilation. The claimant is able to understand, remember and carry[ ]out detailed but not complex instructions[,] make basic decisions and concentrate for extended periods. The claimant could accept instructions and respond appropriately to changes in a routine work setting. The claimant can have occasional contact with the general public.

(Tr. 23.) The ALJ asserted that he "considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 [C.F.R. §] 404.1520c." *Id.*

Among multiple arguments Howen raises is one that the court finds dispositive of this case. Specifically, Howen takes issue with the ALJ's consideration of JoAnn Formby, PsyD.'s medical opinion. Howen copied and pasted into her brief the ALJ's discussion of Dr. Formby's opinion and then stated:

> The section that "the undersigned imposed more restrictive limitations[]" . . . is unclear because the ALJ's residual functional capacity on page 6 of the denial[] shows that they are not more restrictive. It would be in the best interest of the court to review Dr. Formby's mental evaluation, because there is information that does not support the page 6 residual functional capacity.

(D.E. 15 at 7.)

As mentioned, Howen is proceeding *pro se.* Thus, while the court will not read Howen's brief to include arguments she has not raised, the court understands

that the law in this area is complicated and liberally construes her arguments. The court understands Howen to argue that, although the ALJ stated he considered Dr. Formby's opinion and incorporated limitations into the RFC beyond those determined by Dr. Formby, the actual RFC is not more limited than Dr. Formby's suggested RFC. The court construes this argument as challenging the ALJ's compliance with 20 C.F.R. § 404.1520c,[1] which explains how the SSA considers and articulates medical opinions and prior administrative medical findings. She also challenges the ALJ's compliance with the requirements, discussed above, that the ALJ must articulate how the medical evidence supports the RFC and explain why medical opinions were not adopted.

"A medical opinion is a statement from a medical source about what [a claimant] can still do despite [her] impairment(s) and whether [she has] one or more impairment-related limitations or restrictions" in the abilities to perform the physical, mental, or other demands of work activities or the "ability to adapt to environmental conditions." 20 C.F.R. § 404.1513(a)(2) (2017). Medical opinions from medical sources are not entitled to deference or any specific evidentiary weight, but the ALJ must articulate how persuasive the ALJ finds each medical opinion.

---

[1] Howen's filing date was after March 27, 2017, and thus 20 C.F.R. 404.1520c controls consideration of medical opinions and prior administrative medical findings.

20 C.F.R. § 404.1520c(a), (b) (2017). The ALJ must base his consideration of medical opinions on the factors enumerated in 20 C.F.R. § 404.1520c(c). He must, at a minimum, explain how two of the listed factors, supportability and consistency, were considered but is not required to articulate how the other factors were considered. 20 C.F.R. § 404.1520c(b)(2) (2017). As to supportability and consistency, the regulations direct the ALJ to consider a medical opinion's persuasiveness based on how much the objective medical evidence and the medical source's explanations support the medical opinion and how consistent the medical opinion is with the evidence from other sources. 20 C.F.R. § 404.1520c(c) (2017).

The ALJ also must "consider prior administrative medical findings and medical evidence from . . . Federal or State agency medical or psychological consultants" but is not required to adopt those findings. 20 C.F.R. § 404.1513a(b), (b)(1) (2017). As with medical opinions, the ALJ must articulate how persuasive he finds each based on the consideration of the factors enumerated in 20 C.F.R. § 404.1520c(c). *See* 20 C.F.R. § 404.1520c(a), (b) (2017). The ALJ must articulate how supportability and consistency were considered. 20 C.F.R. § 404.1520c(b)(2) (2017).

The ALJ discussed Dr. Formby's evaluation, summarized the clinical interview, detailed the results of the mental status examination, and listed Howen's

diagnoses. (Tr. 25.) In the discussion, the ALJ also included Dr. Formby's medical

opinion on Howen's functional capacity. *Id.* Dr. Formby opined:

> Results of this interview and mental status exam suggest [Howen] does
> not have capacity to understand, carry out, and remember instructions
> (both complex and one-two step). She appears able to sustain
> concentration and persist in work-related activity at a reasonable pace.
> She is able to maintain effective social interaction on a consistent and
> independent basis[] with supervisors, co-workers, and the public. She
> may have difficult[y] dealing with normal pressures in a competitive
> work setting.

(Tr. 756.) The ALJ's explanation of the weight given Dr. Formby's opinion was, in

its entirety, "Dr. Formby's opinion was somewhat persuasive, however, the

undersigned imposed more restrictive limitations." (Tr. 25.)

The ALJ, despite the cursory statement that he found Dr. Formby's opinion

"somewhat persuasive," wholly failed to articulate how the medical evidence and

Dr. Formby's explanations supported her opinion or how consistent her opinion was

with other sources as required by 20 C.F.R. § 404.1520c(b)(2), (c)(1), (c)(2). (Tr.

25.) This is in direct violation of the regulation's requirement that the ALJ articulate

how he considered supportability and consistency. This is an error.

Compounding that error, the ALJ failed to explain in what ways the

limitations that he imposed in his RFC assessment were "more restrictive" than Dr.

Formby's or to explain why the medical opinion was not adopted where it conflicted

with the RFC assessment. (Tr. 25.) The court's comparison of the ALJ's RFC

assessment and Dr. Formby's opinion on functional capacity shows that the former is not more restrictive than Dr. Formby's opinion.

The two assessments do not address all the same limitations. The ALJ found Howen capable of making basic decisions, but Dr. Formby's functional assessment did not address decision-making. Where the two assessments address the same limitations, they are consistent with one another only in terms of Howen's ability to maintain concentration. Otherwise they are not consistent. The ALJ found a greater limitation than Dr. Formby only in one area. That is, the ALJ limited Howen to only occasional contact with the general public, whereas Dr. Formby found that Howen could maintain effective social interaction on a consistent and independent basis with supervisors, co-workers, and the public. In all other areas, Dr. Formby found Howen to have more limitations than did the ALJ. Dr. Formby found that Howen was unable to follow any instructions at all, whereas the ALJ found she could understand, remember, and carry out detailed but not complex instructions. The ALJ found that Howen could respond appropriately to changes in a routine work setting, but Dr. Formby found that Howen would have difficulty dealing with normal pressures in a competitive work setting. Overall, Dr. Formby's RFC opinion is more limited than the ALJ's RFC determination, in direct conflict with the ALJ's statement that he would impose greater limits than suggested by Dr. Formby.

Turning to the prior administrative findings, the ALJ listed several of the state agency psychological consultants' RFC findings. (Tr. 26–27.) The ALJ found the state agency psychological consultants to be "somewhat persuasive" on the basis that "they were generally consistent with the mental status examinations." (Tr. 27.) This finding, when considered in tandem with the ALJ's finding that Dr. Formby's opinion was also "somewhat persuasive," is perplexing. The ALJ did not explain what he meant by "somewhat persuasive" or why, on the one hand, he adopted almost none of Dr. Formby's "somewhat persuasive" opinion and, on the other, he adopted most of the state psychological consultants' "somewhat persuasive" findings.

The ALJ's consideration of the consultants' findings included another error. Although the ALJ articulated his consistency determination by stating that the consultants' findings were "generally consistent" with the record mental status examinations, he failed to address the internal supportability of their findings in violation of 20 C.F.R. § 404.1520c and SSR 96-8p. (Tr. 27.)

The court is faced with several problems. First, despite the conflicts between the RFC assessment and Dr. Formby's medical opinion, the ALJ failed to explain why he did not adopt Dr. Formby's opinion as required by SSR 96-8p, 1996 WL 374184. Second, despite having found all the psychological opinions to be equally "somewhat persuasive," the ALJ rejected most of Dr. Formby's opinion, but adopted

most of the state agency psychological consultants' findings. Third, the ALJ's analysis states that he intended to limit Howen further than suggested by Dr. Formby, but ultimately failed to do so.

In practical terms, because the ALJ did not engage in the analysis required by the regulations, the court cannot engage in the required review of the ALJ's decision. Because the ALJ did not speak to which limitations the ALJ was incorporating into the RFC and which he was not, the court is left to guess at what the ALJ meant by his statement that "the undersigned imposed more restrictive limitations" than Dr. Formby suggested. (Tr. 25.) The court must also guess at which parts of the medical opinions the ALJ found persuasive and which he did not. The court will not engage in guesswork. It is improper for the district court to provide a post hoc rationale for the ALJ's decision. Doing so would "usurp[] the agency's function of weighing and balancing the evidence in the first instance." *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008). "Judicial review is limited to the reasons stated in the ALJ's decision; the magistrate judge should not have supplied possible reasons  for  rejecting a physician's opinion in order to affirm." *Id.*

In summary, the ALJ did not follow proper legal standards in discussing and analyzing Dr. Formby's medical opinion, the prior administrative findings, or the RFC assessment. The ALJ's errors not only violate the applicable legal standards, but they also result in a decision that lacks consistency and fails to demonstrate how

17

the ALJ's findings are supported by the evidence. In short, the ALJ's decision fails to provide the court with an adequate explanation of the basis for his determination that Howen was not disabled. Absent sufficient articulation, the court cannot discern whether the ALJ's assessments of the persuasiveness of Dr. Formby's medical opinion and the state agency consultants' findings are supported by substantial evidence and, in turn, whether the RFC assessment is supported by substantial evidence.

### E. Error Analysis

Having found that the ALJ's evaluation of the medical opinions was in error, the court turns to whether the error requires remand. Errors alone do not justify relief from an ALJ's decision. *See Kneeland v. Berryhill*, 850 F.3d 749, 761 (5th Cir. 2017) (quoting *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007)) ("Procedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected.") "This Court requires . . . a showing that the claimant was prejudiced by the agency's failure to follow a particular rule before such a failure will be permitted to serve as the basis for relief from an ALJ's decision." *Shave v. Apfel*, 238 F.3d 592, 597 (5th Cir. 2001). "Prejudice can be established by showing that the additional considerations '"might have led to a different decision."' *Mettlen v. Barnhart*, 88 F. App'x 793 (5th Cir. 2004) (quoting *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000)).

The ALJ denied Howen benefits at step five of the sequential analysis. (Tr. 28–29.) At step five, the ALJ determines whether the claimant can perform any other work by considering the claimant's RFC and other factors, including age, education, and past work experience. *Perez*, 415 F.3d at 462. If the claimant can perform other work available in the national economy, the claimant is not disabled. *Schofield*, 950 F.3d at 318.

To support his finding that Howen could find other work, he cited the testimony of the VE who said that there were jobs that a person with Howen's age, education, work experience, and RFC could perform. (Tr. 28.) If the ALJ intended to impose limitations in the RFC beyond those suggested by Dr. Formby, as he indicated he meant to do, then it is not clear that the VE, confronted with that more limited RFC, would have testified that Howen could find other work. The same is true if a proper evaluation of the medical opinions would lead to a more limited RFC. The case must be remanded for a proper evaluation of the medical opinions and a reevaluation of the RFC. If the ALJ's determination of the RFC changes, a further hearing with further evidence from the VE may be necessary.

On remand, the ALJ must clearly state the evidence on which he relies, comply with the applicable legal standards for the articulation of his determinations on persuasiveness, including consistency and supportability, of medical opinions,

and explain how the evidence and his factual determinations support his RFC. The court is not requiring the ALJ to go beyond what the regulations require, however.

The court expresses no opinion on the ALJ's ultimate determination that Howen was not disabled and recognizes that the result after remand may be the same. Without the correct application of the law and transparent reasoning, however, the court cannot conclude with confidence that Howen's RFC should not include more restrictive limitations that could lead to a different result.[2]

### 5. Conclusion

The record reflects that the ALJ incorrectly applied legal standards in denying Howen's disability benefits. The ALJ's determination that Howen was not disabled during the relevant period therefore cannot be said to be supported by substantial evidence. There is no genuine issue of material fact, and summary judgment is appropriate. Fed. R. Civ. P. 56(a), (c). Accordingly, the court **GRANTS** Plaintiff's motion for summary judgment and **DENIES** Defendant's motion for summary

---

[2] The court makes one final note. Howen also argues that "the ALJ erred in discrediting" her testimony on the stated ground that it was inconsistent with her claimed limitations and that the ALJ "should have provided reasonable explanations" for his determination (D.E. 15 at 14.) SSR 16-3p requires the ALJ to provide "specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." It is not clear that the ALJ complied with this regulation. This non-compliance played no role in the court's decision, but on remand, the ALJ should make certain to properly consider the claimant's testimony.

judgment. The case is remanded to the Commissioner for further proceedings consistent with this opinion.

A separate final judgment will be entered.

Signed at Houston, Texas on March 25, 2021.

_____
Peter Bray
United States Magistrate Judge